IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| IN RE:<br><br>TROY DAVID LONION,<br><br>*Debtor.* | CASE NO. 24-32574-SGJ-7<br><br>CHAPTER 7 |
| RONALD G. SALA, INDEPENDENT PERMANENT ADMINISTRATOR FOR THE ESTATE OF EDITH THEODORA REYNOLDS, DECEASED,<br>*Plaintiff,*<br>VS.<br><br>TROY DAVID LONION,<br>*Defendant.* | Adversary No. _____ |

**COMPLAINT OBJECTING TO DISCHARGE OF CLAIM OF
RONALD G. SALA, INDEPENDENT PERMANENT ADMINISTRATOR
FOR THE ESTATE OF EDITH THEODORA REYNOLDS, DECEASED**

Plaintiff RONALD G. SALA, INDEPENDENT PERMANENT ADMINISTRATOR FOR THE ESTATE OF EDITH THEODORA REYNOLDS, DECEASED ("the Estate") pursuant to Section 523 of the United States Bankruptcy Code (11 U.S.C. 101, *et seq.,* the "Bankruptcy Code") and Rules 7001, *et seq.* of the Federal Bankruptcy Rules, complaining of TROY DAVID LONION, Debtor, and files this Complaint Objecting to Discharge of Claim of Ronald G. Sala, Independent Permanent Administrator for the Estate of Edith Theodora Reynolds, Deceased, and in support thereof would show the following:

**1.0 Parties, Jurisdiction, and Venue.**

1.0 Sala is the Independent Permanent Administrator for the Estate of Edith Theodora Reynolds, Deceased. The Estate is a creditor and party in interest in Debtor's

Chapter 13 bankruptcy case and filed a Proof of Claim in such case in the amount of $166,277.78 on June 13, 2024.

1.2 Debtor is an individual residing at 324 S. Montclair Avenue, Dallas, Texas 75208, where he may be served with process. Debtor voluntarily filed a petition seeking relief under Chapter 7 of the Bankruptcy Code on June 10, 2024.

1.3 This Court has jurisdiction of this adversary proceeding pursuant to 28 U.S.C. 1334(b) and 11 U.S.C. 523. This is a core proceeding under 28 U.S.C. 157(b)(2)(I) and 28 U.S.C. 157(b)(2)(J).

1.4 Venue in this District is proper under 28 U.S.C. 1409(a).

**2.0 Facts.**

2.1 Plaintiff Ronald G. Sala, is the Independent Permanent Administrator for the Estate of Edith Theodora Reynolds, Deceased,

2.2 Edith Theodora Reynolds was Sala's maternal aunt. She died on February 28, 2015 at the age of ninety-eight.

2.3 Reynolds lived alone at her residence at 318 S. Montclair Avenue, Dallas, Texas, until shortly before the end of her life. She owned this house free and clear of all liens, claims and interests. In addition, she had personal property, including bank deposits and investment accounts in excess of $166,000.00.

2.4 As she grew older, Reynolds was routinely assisted by various family members and a neighbor, Russell Maris, who assisted her in handling her financial affairs, shopping, and maintaining her house.

2.5 In December 2014, Ms. Reynolds began having trouble getting out of bed unassisted, often relying on Maris's help. Between January 12 and 18, 2015, Reynolds's health began to deteriorate and she experienced a number of falls.

2.6 On January 18, 2015, Reynolds was found on the floor in a state of unkempt care. She had urinated and defecated upon herself, was extremely thin, incoherent, mumbling and speaking to people who were not in the room. She was transported by EMS to Doctors Hospital where she was evaluated by Dr. Jorge A. Ontiveros. After

being evaluated at Doctors Hospital, Ms. Reynolds was transferred on January 21, 2015 to Golden Acres, a skilled nursing facility.

### Reynolds's Lack of Mental Capacity and Execution of Gift Deed and Other Documents

2.7 The therapists and the nursing staff at Golden Acres repeatedly characterized Ms. Reynolds's mental status as confused and forgetful, requiring frequent cues from staff in order to carry out activities of daily living such as dressing and finding her way around. The notes dated January 27–31, 2015 and those in February did not differ significantly from the others, indicating that there had been no improvement—either temporary or sustained—in her ability to understand complex matters or make decisions regarding her finances. Dr. Ontiveros's note dated January 30 stated that Ms. Reynolds would need the social worker to arrange for her to get help in managing finances and other issues, and such a note would have been inappropriate had Ms. Reynolds been capable of making those types of decisions by herself.

2.8 An additional note on February 2, 2015 makes note of a guardianship process that had already begun—a process that would not have been started had those involved not had grave doubts about Ms. Reynolds's ability to understand issues related to her financial and legal status.

2.9 Even Ms. Reynolds's neighbor, Russell Maris, who had known her for over twenty years and saw her on a daily basis, was very concerned about Ms. Reynolds's mental state and commented that since entering Golden Acres "she obviously had deteriorated further since she had left her home."

2.10 Prior to January 18, 2015, Lonion had no relationship with Ms. Reynolds other than possibly as a passing acquaintance who happened to live nearby.

2.11 Lonion lives at 324 S. Montclair Avenue, two houses down from Reynolds's house. Even though he had no prior relationship with Reynolds, Lonion insinuated himself into her life and financial affairs while she was at Golden Acres.

2.12 When Ms. Reynolds was being removed from her home on January 18, 2015, Lonion approached Russell Maris and asked what was happening. Maris explained that she was being transported to a medical facility for evaluation. When Maris mentioned

that Ms. Reynolds had wanted to change her will to name Maris as executor in place of her nephew, Robert Lam, Lonion told Maris that he could make those changes. A few days later, Lonion (who Maris believed to be a lawyer) told Maris that he could talk to Ms. Reynolds about changing her will. The next time Maris saw Lonion, Lonion had a power of attorney and insisted that Maris give him the key to her house and that he (Lonion) would take over handling her financial affairs.

2.13 On January 31, 2015, Lonion visited Reynolds at Golden Acres, a skilled nursing facility, and secured her signature on a Last Will naming himself as executor and leaving the entirety of her estate—less a gift of $5,000.00 to Robert Lam—to himself. Lonion obtained Reynolds's signature on a Gift Deed conveying her house at 318 S. Montclair to him. Lonion also obtained her signature on a Directive to Physicians and a Statutory Durable Power of Attorney, and a Gift Deed to him of her house at 318 S. Montclair. Because of her advanced age and physical condition, Ms. Reynolds lacked the mental capacity to understand the legal effect of the documents Lonion presented her to sign.

<b>Lonion Transfers Reynolds's Money to Himself</b>

2.14 In late January 2015, but possibly later, Lonion obtained a check from Ms. Reynolds for $10,000.00. On February 4, 2015 Lonion wrote himself another check on Ms. Reynolds's account for $10,000.00 and on February 24, 2015 wrote himself another check on Ms. Reynolds's account for $20,000.00—these two checks were both signed by Lonion, apparently under the power of attorney.

2.15 On February 26, 2015, using the power of attorney that he had prepared, Lonion, added himself as a signatory on Ms. Reynolds's Bank of Texas Account No. 2819.

2.16 Ms. Reynolds died on February 28, 2015.

2.17 The "gifts" to Lonion represented by the three check described above were made while Lonion held a power of attorney from Ms. Reynolds. One check was not cashed by Lonion until after Ms. Reynolds had died. The other two were signed by Lonion himself—clearly indicating that he had assumed a fiduciary capacity.

**Lonion Transfers Estate Money to Himself Without Probate Court Authorization**

2.18 Lonion initiated a probate proceeding on March 6, 2015 attempting to admit the January 31, 2015 will to probate. Robert Lam, Ms. Reynolds's nephew, filed a counter suit seeking to probate an earlier will that had been torn up by Lonion. Lonion eventually dismissed his probate application with prejudice and on September 2, 2015 the probate court signed an Order of Nonsuit With Prejudice as to Lonion's application for probate. Ronald G. Sala subsequently qualified as the Independent Permanent Administrator for the Estate of Edith Theodora Reynolds, Deceased.

2.19 Even though Lonion never qualified as a representative of Reynolds's estate, starting shortly after her death he began systematically transferring her funds to his own personal accounts without authorization from the probate court handing the Estate.

2.20 Starting on March 2, 2015 (two days after Ms. Reynolds had died) and ending on April 20, 2015, Lonion made a series of fifteen cash withdrawals of $500.00 each from Reynolds's Bank of Texas account (account no. 2819). These withdrawals (which totaled $7,500.00) together with the three checks described above (which totaled $40,000.00), were deposited into Lonion's account no. 6576 at Texans Credit Union. Lonion made mortgage payments on his home from his Texans Credit Union Account, which contained commingled funds.

2.21 Ms. Reynolds's nephews, Donald Sala and Ronald Sala, were suspicious of Lonion's activities and provided Bank of Texas and Bank of America with copies of Ms. Reynolds's death certificate, causing those institutions to freeze Ms. Reynolds's accounts.

2.22 After Bank of America and Bank of Texas learned of Reynolds's death and froze her accounts, Lonion developed a new scheme to get her funds. On April 9, 2015, using the January 31, 2015 Power of Attorney, Lonion opened an account with Chase Bank, N.A. in the name of "Edith Reynolds or Troy Lonion POA." (Account No. 7444). The signature card for this account, dated April 9, 2015, states "Type of Ownership[:] Individual with POA."

2.23 Between April 27, 2015 and November 23, 2016, Lonion deposited 38 checks totaling $118,777.78 and payable to Edith T. Reynolds into Account No. 7444.

2.24 Between April 27, 2015 and November 3, 2015, Lonion transferred $117,575.00 from Account No. 7444 to his own personal account at Chase Bank (Account No. 5343).

2.25 From December 1, 2014 through April 20, 2017 Lonion used $100,017.71 of Ms. Reynolds's funds to pay the for improvements and remodeling on his home at 324 S. Montclair, Dallas, Texas.

2.26 From December 1, 2014 through April 20, 2017, Lonion also used $17,338.31 of Ms. Reynolds's funds to pay the landscaping on his home at 324 S. Montclair, Dallas, Texas.

2.27 Between July 2, 2015 and January 5, 2017, Lonion made payments on his mortgage to Commercial Bank of Texas from his Texans Credit Union Account No. 6576 totaling $34,365.20.

### Proceedings in the Probate Court; Final Judgment

2.28 In January 2017 Sala, who had qualified as Administrator for the Reynolds Estate, filed a suit in Dallas County Probate Court against Troy Lonion to recover property of the estate that had been wrongfully taken by Lonion (the "Probate Suit"). Among the remedies sought by Sala was a request for the imposition of an equitable lien/constructive trust against Lonion's property at 324 South Montclair.

2.29 On March 25, 2024 the judge of Probate Court No. 2 signed a Final Judgment which incorporated the provisions of an earlier interlocutory summary judgment. Among other relief contained in the judgment, it awarded Sala actual damages in the amount of $166,277.78 for the monies Lonion fraudulently took from the Estate. The judgment also awarded prejudgment interest in the amount of $103,465.47.

### Funds Received From the Pilgrim Estate

2.30 Between 2018 and 2024, Lonion was involved in a will contest suit in Dallas County Probate Court No. 1 as No. PR-18-03648-1 styled *In the Estate of Darrell G.*

*Pilgrim, Deceased.* (N.B. This is a separate probate court and probate case from the one involving Sala, which was filed in Probate Court No. 2.)

2.31 The will contest filed by Ronnie Soukup was tried and determined in favor of Lonion; the final judgment in that matter was appealed to the Dallas Court of Appeals in No. 05-22-00854-CV; *In the Estate of Darrell G. Pilgrim.* During that case, Pilgrim's house was sold and the proceeds were deposited in the registry of Probate Court No. 1.

2.32 In March 2024 the Lonion and Soukup (Pilgrim's nephew) reached a settlement where the sum of $100,000 was paid to Soukup and the balance of the funds in the court's registry—$131,994.10—was paid to Lonion.

2.33 On March 28, 2024—before the Pilgrim funds were disbursed, the judge of Probate Court No. 2 (the Reynolds case) signed a turnover order directing the Debtor to deposit any funds he received in the Pilgrim case into the registry of Probate Court No. 2. Although Lonion had actual notice of the turnover order and its contents, he disregarded the order and deposited the funds into his personal bank account.

2.34 Lonion's Statement of Financial Affairs reflects that in April 2024 he received the sum of $131,944.10 and that he made multiple distributions—including payment of $59,755.15 to Commercial Bank of Texas (to cure mortgage defaults) and $8,277.25 to Toyota Financial Services (to cure payment defaults on the loan for the Toyota Tacoma). The total payments reflected on the Statement of Financial Affairs total $78,024.35, leaving $53,919.75 of the proceeds from the Pilgrim probate case unaccounted for during the two month period immediately preceding his bankruptcy filing in this case.

**3.0 Objection to Discharge of Sala's Claim Based on False Pretenses, False Representations, Actual Fraud, and Fraud or Defalcation While Acting in a Fiduciary Capacity.**

3.1 Sala objects to the discharge of the its claim against Debtor under § 523(a)(2)(A) and of the Bankruptcy Code because such claim is for money, property, services, or an extension of credit which Troy David Lonion obtained through false pretenses, false representations, or actual fraud. Sala also objects to the discharge of the Estate's claim against Debtor under § 523(a)(4) and of the Bankruptcy Code because

such claim is for fraud or defalcation while Debtor was acting in a fiduciary capacity, and/or embezzlement or larceny.

3.2 The Estate sustained damages and injuries in the aggregate amount of $166,277.78 as the proximate result of the false pretenses, false representations, actual fraud , including fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny of the Debtor, Troy David Lonion.

**4.0 Objection to Discharge of Sala's Claim Based on Intentional Fraudulent Transfers, Removal, Destruction, or Concealment of Property Made Within One Year Prior to and Subsequent to Petition Date.**

4,1 By reason of the foregoing and other actions and conduct of the Debtor, Debtor, with intent to delay, hinder, or defraud Sala and other creditors and officers of his bankruptcy estate, transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed, property of the Debtor within one year prior to the petition date, including, without limitation, the funds he received from the Pilgrim Estate. To the extent that Debtor may have made one or more fraudulent transfers with the actual intent to hinder, delay, and defraud his creditors more than one year prior to the petition date, Debtor's discharge should be denied under the "continuing concealment doctrine" established by the United States Court of Appeals in *Thibodeaux v Olivier (In re Olivier),* 819 F.2d 550, 553 (5th Cir. 1987).

4.2 By reason of the foregoing and other actions and conduct of the Debtor, Debtor, with intent to delay, hinder, or defraud Plaintiffs and other creditors and officers of his bankruptcy estate, transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed, property of the Debtor's bankruptcy estate subsequent to the petition date, including, without limitation, the funds he received from the Pilgrim Estate.

4.3 Lonion has failed to explain satisfactorily, before determination of denial of discharge, any loss of assets or deficiency of assets to meet the debtor's liabilities.

4.4 For the reasons stated herein, this Court should deny the Debtor's discharge in this case.

WHEREFORE, Plaintiff Ronald G. Sala, Independent Permanent Administrator for the Estate of Edith Theodora Reynolds, Deceased, prays that the Court enter a judgment in its favor and against the Debtor Troy David Lonion, granting the relief requested herein and excepting the Debtor's obligations, liabilities, and indebtedness to Plaintiff from any discharge which might be granted under the Bankruptcy Code, awarding the Estate its costs and reasonable attorney's fees. Plaintiff further requests that the Debtor be denied a discharge in this case and that the Plaintiff have such further and additional relief as to which he may be justly entitled.

Respectfully submitted,

/s/ *Robert H. Renneker*

_____
Robert H. Renneker
 Texas Bar No. 16778800
1412 Main Street, Suite 210
Dallas, Texas 75202
(214) 742-7100
(214) 742-7110 (telecopier)
E-Mail: renneker@verizon.net

ATTORNEY FOR PLAINTIFF